# UNITED STATES DISTRICT COURT
# MDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ERICA DANIELS,**

    **Plaintiff,**

v.                                           Case No. 8:17-cv-00711-AAS

**NANCY A. BERRYHILL, Deputy**
**Commissioner of Operations,**
**Social Security Administration,**

    **Defendant.**
_____/

## ORDER

Plaintiff, Erica Daniels, seeks judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act, 42.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties, the Commissioner's decision is **AFFIRMED**.

    **I.    PROCEDURAL HISTORY**

Ms. Daniels protectively filed a Title II application for a period of disability and for DIB on May 25, 2013, and protectively filed a Title XVI application for SSI on August 20, 2014. (Tr. 20). In both applications, Ms. Daniels alleged disability beginning May 16, 2013. *Id.* The claims were denied at both the initial and reconsideration levels, and Ms. Daniels timely requested a hearing before an ALJ,

which was held on February 3, 2016. *Id.* The ALJ issued an unfavorable decision to Ms. Daniels on March 3, 2016. (Tr. 17–31). Ms. Daniels then requested review from the Appeals Council, which was denied. (Tr. 1–4). Ms. Daniels timely filed a complaint with this Court. (Doc. 1). This case is now ripe for review under 42 U.S.C. § 405(g).

## II. NATURE OF DISABILITY CLAIM

### A. Statement of the Case

Ms. Daniels was born on July 8, 1970 and has at least a high school education. (Tr. 30). She has past relevant work as a medical records clerk. *Id.* She alleged disability beginning May 16, 2013 due to coronary artery disease, status post stent; history of myocardial infarction; right shoulder bursitis; lumbago; type II diabetes mellitus; asthma; chronic obstructive pulmonary disease ("COPD"); obesity; hypertension; hyperlipidemia; hypokalemia; gastroesophageal reflux disease ("GERD"); insomnia; anxiety, and depression. (Tr. 22).

### B. Summary of ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his

---

[1] If the ALJ determines the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920.

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. §§ 404.1572, 416.910.

2

physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity ("RFC").[3] Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing other work that exists in the national economy, then he is not disabled. §§ 404.1520(g), 416.920(g).

Here, the ALJ determined Ms. Daniels had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 22). The ALJ then concluded Ms. Daniels has severe impairments, including, coronary artery disease, status post stent; history of myocardial infarction; right shoulder bursitis; lumbago; type II diabetes mellitus; asthma; COPD; and obesity. *Id*. Despite these findings, the ALJ concluded Ms. Daniels's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 24).

---

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. §§ 404.1520(f), 416.945(a).

3

The ALJ then determined Ms. Daniels had the RFC to perform sedentary work, with these limitations:

> [Ms. Daniels] has the residual functional capacity to perform sedentary work…that does not require climbing ladders, ropes, or scaffolds; nor more than occasional climbing ramps/stairs; crawling; crouching; kneeling; balancing; stooping; and overhead reaching with the right upper extremity; nor more than concentrated exposure to extreme temperatures, wetness, humidity, vibrations, and irritants such as fumes, odors, dust, gasses or poorly ventilated areas and no more than a moderate exposure to hazards.

(Tr. 25). Based on Ms. Daniels's RFC and the testimony of a vocational expert ("VE"), the ALJ found she cannot perform her past relevant work as a medical records clerk. (Tr. 30). Based on Ms. Daniels's vocational factors and the RFC, however, the ALJ concluded Ms. Daniels can perform other work available in significant numbers in the national economy. *Id.* Therefore, the ALJ concluded Ms. Daniels was not disabled. (Tr. 31).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether substantial evidence supports his findings. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). There must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

4

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Ms. Daniels raises one main issue on appeal: whether the ALJ erred in deciding her depression and anxiety were non-severe conditions. (Doc. 18, at p. 5). Specifically, Ms. Daniels argues the ALJ failed to fully develop the record by not ordering a consultative examination regarding Ms. Daniels's psychological difficulties. *Id.* at p. 5. Additionally, Ms. Daniels argues the Appeals Council failed to fully evaluate the record evidence and should have remanded Ms. Daniels's case for further development. *Id.* at 7.

#### i. Whether the ALJ Fully Developed the Record Regarding Ms. Daniels's Mental Impairments.

Ms. Daniels first contends the ALJ failed to fully develop the record because he did not order a consultative examination of her mental impairments. (Doc. 18, at p. 5) Without a consultative mental health examination, Ms. Daniels argues, the

5

ALJ's findings regarding the severity of her mental impairments are not supported by substantial evidence. *Id.* at 6. In response, the Commissioner asserts Ms. Daniels failed to prove she is disabled, and substantial record evidence supports the ALJ's decision she could perform work. (Doc. 19, at p. 6).

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *see* 20 C.F.R. § 416.912(d) ("Before [the Commissioner] make[s] a determination that [claimant is] not disabled, [the Commissioner] will develop [claimant's] complete medical history for at least the 12 months preceding" claimant's application). However, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

When the claimant is not represented before the ALJ, which is not the case here, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham*, 129 F.3d at 1423 (internal citations omitted). Where the claimant was not represented, "there must be a showing of prejudice" before remand is appropriate, which is found if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* (internal citations omitted). Examples of such prejudice are the ALJ's failure to obtain records, elicit testimony, or consider all record evidence. *Brown v. Shalala*, 44 F.3d 931, 936

6

(11th Cir. 1995); *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (finding prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.").

Ms. Daniels's contention that the ALJ failed to fully develop the record does not merit reversal because the transcript shows the ALJ fully evaluated her testimony and documented medical history regarding her mental health issues. First, Ms. Daniels was represented by counsel at her hearing before the ALJ. Although the ALJ had a duty to develop the record, it was not the heightened duty required of an ALJ when the claimant is unrepresented. *Graham*, 129 F.3d at 1422. Regarding Ms. Daniels's argument that the ALJ erred in failing to order a mental health consultative examination, the Eleventh Circuit held "[it] is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984)); *see also Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. 1981) (finding "in fulfilling his duty to conduct a full and fair inquiry, the [ALJ] is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision.").[4] In *Holladay*, the plaintiff

---

[4] In *Ford*, the court held the ALJ erred in failing to order a consultative psychiatric examination based on the plaintiff's testimony, her prescribed medication for nervousness, and a written report from the plaintiff's social worker that stated she

7

alleged the ALJ did not fully and fairly develop the record because he failed to order a coronary arteriogram. 848 F.2d at 1208. The court agreed the absence of the coronary arteriogram made it impossible for the ALJ to determine with absolute certainty whether the plaintiff had ischemic heart disease. *Id.* at 1210. The court decided, however, that the then applicable regulation, 20 C.F.R. § 416.917(a) did "not require absolute certainty; it requires only substantial evidence to sustain the Secretary's findings. The absence of an arteriogram did not render the ALJ incapable of making an overall disability determination. It caused him only to proceed beyond the third step of the sequential evaluation process." *Id.* Here, and as explained in further detail below, substantial record evidence supports the Commissioner's decision regarding the severity of Ms. Daniels's mental health impairments. The absence of a consultative exam from a psychologist or psychiatrist did not render the ALJ incapable of making an overall disability determination.

Additionally, Ms. Daniels has demonstrated no prejudice in the form of evidentiary gaps created by the ALJ's decision not to order a consultative examination. The ALJ considered the evidence in the record in reaching his conclusion and applied the proper legal standards in fully evaluating the severity of Ms. Daniels's mental impairments of anxiety and depression, including records from

---

was "emotionally unstable and unable to work due to her mental and physical condition." 659 F.2d at 69. The ALJ also failed to make factual findings regarding the severity of the plaintiff's alleged mental impairments. *Id.* In the instant case, there is no objective record evidence from Ms. Daniels's physicians regarding the limitations caused by her mental health impairments or opinions on her ability to work.

8

her primary care physicians, Dr. Radu Mercea and Dr. Monica Ryder—the only records by a treating source that contain *any* documentation of Ms. Daniels's mental impairments. (Tr. 525–588).

At step two of the sequential evaluation process, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to perform basic work skills. *Phillips*, 357 at 1237 (citing 20 C.F.R. § 404.1520(c)). In this step of the sequential process, the claimant must prove that he or she suffers from a severe impairment or combination of impairments. *Gibbs v. Barnhart*, 156 F. App'x 243, 246 (11th Cir. 2005). An impairment is not severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "Basic work activities" include: (1) physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)–(6).

If an ALJ errs in concluding a claimant's *additional* impairments are non-severe, such error is harmless when the ALJ concludes the claimant has a severe

9

impairment. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010). This is because the ALJ has determined step two of the sequential analysis is met and proceeds in the disability analysis. *Id.* ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment," which is all that is required at step two of the sequential analysis); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902–03 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.").

The ALJ is, however, "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951 (emphasis added). An ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). As examples, an ALJ's statements that he considered whether the claimant's impairment or combination of impairments met a Listing or that he considered all symptoms in determining the claimant's RFC are sufficient "to demonstrate that the ALJ

considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 951 (finding the ALJ's discussion of the combined effects of claimant's impairments sufficient because the ALJ discussed the non-severe impairments in the ALJ's assessment of claimant's RFC); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (emphasis in original) (quoting the ALJ and finding it was "clear" the ALJ considered claimant's impairments in combination because the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity.'").

Here, at step two of the sequential evaluation process, the ALJ found Ms. Daniels had severe impairments of "coronary artery disease, status post stent; history of myocardial infarction; right shoulder bursitis; lumbago; type II diabetes mellitus; asthma; chronic obstructive pulmonary disease, and obesity" (Tr. 22), and thus proceeded beyond step two. Any error in failing to find a plaintiff suffers from *additional* severe mental health impairments of anxiety and depression was harmless. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013). Nevertheless, the ALJ considered the four areas of mental functioning used in the disability regulations for evaluating mental disorders and in the Listing of Impairments.[5] The ALJ found Ms. Daniels's mental impairments were not severe

---

[5] 20 C.F.R., Part 404, Subpart P, Appendix 1. These four areas of mental functioning are known as the "paragraph B" criteria and consist of: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation as defined under section 12.00C4. The limitations set forth in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.

11

because they did not cause more than minimal limitation in her ability to perform basic mental work activities. (Tr. 23). Additionally, the ALJ considered Ms. Daniels's testimony regarding the effects of her anxiety and depression, but ultimately found her testimony unpersuasive. (Tr. 28–29). The ALJ noted Ms. Daniels reported feelings of hopelessness or depression, sleep disturbances, and some decreased concentration to her primary care doctors, yet had not undergone any specialized recommended mental health care. (Tr. 23). Additionally, her primary care doctor's notes indicate Ms. Daniels had a normal appearance, euthymic mood, and normal thought content; she reported no psychological symptoms on several occasions. *Id.* Ms. Daniels also sought no mental healthcare despite her testimony regarding her memory problems. (Tr. 29).

The ALJ also found Ms. Daniels only had mild limitations with her activities of daily living. (Tr. 23). The ALJ noted Ms. Daniels reported very restrictive activities of daily living, but she attributed the limitations mainly to her physical, not mental, symptoms. *Id.* Ms. Daniels reported to consultative examiner, Dr. Haight, that she could do her activities of daily living, drive, walk for one block before shortness of breath, shop sometimes, and do a little housework. *Id.* Next, the ALJ found Ms. Daniels also had mild limitations in her ability to function socially. (Tr. 24). The ALJ noted Ms. Daniels's testimony regarding her diminished sleep, but found she was able to socialize with family members (Tr. 62–63), go to public places, and interact with medical personnel without difficulty. (Tr. 24). The ALJ found Ms. Daniels also had mild limitations in the third functional area of concentration, persistence, or pace. *Id.*

Ms. Daniels testified she was able to drive within her physical tolerances, complete some of her household chores, watch her grandchildren, and shop. *Id.* The ALJ determined Ms. Daniels's reported activities demonstrate she can follow steps, respond to the needs of others, and concentrate. *Id.* Finally, the ALJ found Ms. Daniels had experienced no episodes of decompensation. *Id.* Ultimately, the ALJ found Ms. Daniels's medically determinable mental impairments caused no more than a mild limitation in the first three functional areas, no episodes of decompensation in the fourth area, and were, therefore, non-severe. *Id.*

The medical record indicates Ms. Daniels's primary care physicians diagnosed her with "major depressive disorder, single episode, unspecified," prescribed medication, and referred her to Behavior Health Consultants for evaluation of anxiety and depression. (Tr. 552). The fact Ms. Daniels was diagnosed with major depressive disorder and prescribed medication does not automatically lead to concluding she is limited by her mental impairments in her ability to work. *See Smith v. Comm'r of Soc. Sec.,* 501 F. App'x 875, 879 (11th Cir. 2012) (concluding that, though the record indicated a history of anxiety and depression for which the claimant was prescribed medication, nothing in the record indicated the claimant experienced any effects from the mental impairments that could be expected to interfere with her ability to work). The ALJ did not dispute Ms. Daniels has mental impairments. The inquiry, however, is whether Ms. Daniels's mental impairments are severe enough to limit her ability to work. Based on the medical record evidence, Ms. Daniels's testimony, and applicable legal standards, the ALJ concluded they were not.

The ALJ's conclusions at steps three and four of the sequential process demonstrate the ALJ considered all Ms. Daniels's impairments in combination. At step three of the sequential process, the ALJ properly considered all Ms. Daniels's relevant impairments and concluded she did not have an "impairment or combination of impairments" that met or equaled a Listing (Tr. 24), which is sufficient to show the ALJ considered the combined effect of Ms. Daniels's impairments. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011).

The ALJ properly developed a full and fair record in evaluating Ms. Daniels's mental health impairments. The ALJ found at step two of his analysis that Ms. Daniels has severe impairments; therefore, his determination that her mental health impairments are non-severe, even if erroneous, was harmless. At steps three and four of his analysis, the ALJ sufficiently considered whether the combination of Ms. Daniels's severe and non-severe impairments rendered her disabled. Reversal is not warranted.

### ii. Appeals Council Review

Ms. Daniels next argues the Appeals Council failed to properly evaluate medical records from a mental health facility, Gracepoint, and should have remanded the case back to the ALJ for further development. (Doc. 18 at p. 7.) When a claimant is dissatisfied with a hearing decision, the claimant may request the Appeals Council review the action. 20 C.F.R. §§ 404.967, 416.1467. When a claimant appeals an ALJ's decision to the Appeals Council, "[t]he Appeals Council must consider new, material,

and chronologically relevant evidence and must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (internal quotation and citation omitted); *see* 20 C.F.R. § 416.1470(b) ("In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.").

Review by a federal district court requires consideration of evidence not initially submitted to the administrative law judge, but considered by the Appeals Council, to determine whether that new evidence renders the denial of benefits erroneous. *See Ingram*, 496 F.3d at 1258, 1262. A remand under sentence four is warranted when a claimant submits new evidence to the Appeals Council, and the Appeals Council did not adequately consider the new evidence in denying the claimant's request for review. *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013) (*citing Ingram*, 496 F.3d at 1268); *see also Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (stating "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate."). Accordingly, "[t]o obtain a sentence four remand, the claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole. *Timmons*, 522 F. App'x at 902 (*citing Ingram*, 496 F.3d at 1266–67). The

Eleventh Circuit consistently rejects the notion that the Appeals Council must articulate a detailed explanation when denying a request for review or considering newly submitted evidence. *See Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852–53 (11th Cir. 2015) (concluding the Appeals Council is not required to make specific findings of fact when it denies review, regardless of whether the new evidence is deemed cumulative or not chronologically relevant); *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784–85 (11th Cir. 2014) (concluding that, where the Appeals Council accepted the new evidence and stated that it denied review because the additional evidence failed to establish error in the ALJ's decision, the Appeals Council adequately reviewed the new evidence and did not have to provide a detailed rationale for denying review).

Here, Ms. Daniels contends the Appeals Council should have fully evaluated the evidence from Gracepoint regarding Ms. Daniels's mental health treatment and remanded the case back to the ALJ for further review. (Doc. 18, at p. 7). The record here shows the Appeals Council considered the reasons Ms. Daniels disagreed with the ALJ's decision and evaluated the Gracepoint medical records. (Tr. 2–5.) The Appeals Council also made Gracepoint's documentation part of Ms. Daniels's record as "Exhibit 14F." (Tr. 4–5.) The Appeals Council ultimately determined the information provided no basis for changing the ALJ's decision. (Tr. 2). Therefore, the Appeals Council applied the appropriate legal standards and did not need to provide any further substantive rationale for its decision. Remand is not warranted on that basis.

Notwithstanding the above, Ms. Daniels further contends the Appeals Council erred in failing to remand her case to the ALJ in light of newly submitted medical records from Gracepoint, because the records are important and relevant to Ms. Daniels's disability claim. (Doc. 18, at p. 7). Where the evidence submitted by the claimant is "new, material, and chronologically relevant," the Appeals Council must consider it. *Ingram*, 496 F.3d at 1261 (internal quotation omitted); see 20 C.F.R. § 416.1470(b). "Evidence is considered 'material' when it is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987)). Further, evidence is considered chronologically relevant when it relates to the period on or before the date of the ALJ's decision. *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 864 (11th Cir. 2017) (citing *Washington*, 806 F.3d at 1322).

Here, the new medical evidence Ms. Daniels submitted to the Appeals Council comprises fourteen pages of medical treatment notes from Ms. Daniels's treatment at Gracepoint beginning on January 15, 2016, through May 11, 2016. (Tr. 619–632). Some of Ms. Daniels's treatment dates at Gracepoint are dated after the ALJ's March 3, 2016 decision. Although the Gracepoint treatment records are substantively relevant to Ms. Daniels's claim, they do not contain probative information that has the reasonable possibility of changing the administrative result. The records only show Ms. Daniels complained of anxiety and depression symptoms and received mental health treatment for those symptoms. (Tr. 620–630). While Gracepoint does

note Ms. Daniels exhibited distractible attention and concentration during her second visit, it also notes Ms. Daniels's memory appeared intact and she demonstrated slow, yet coherent speech. (Tr. 622–624). Further, during her February 23, 2016 visit, Ms. Daniels exhibited anxious, depressed, and irritable mood, but also exhibited good eye contact, good insight, and good judgment. (Tr. 629). Finally, during her visit to Gracepoint in May 2016, the treatment notes indicate Ms. Daniels was depressed and constricted in her mood, but her speech was normal, her thought content was appropriate, her eye contact was good, and her insight and judgment were good. (Tr. 632).

Again, the ALJ's findings do not dispute Ms. Daniels's mental health symptoms or diagnoses, but rather, their severity. The Gracepoint records likewise contain diagnoses of anxiety and depression, but they do not indicate if or how those diagnoses would affect Ms. Daniels's ability to work. Even though the Gracepoint records are chronologically and substantively relevant, they do not contain information that has the reasonable probability of changing the administrative outcome.

Given the above objective and subjective record evidence and lack of any documentation from medical sources regarding limitations on Ms. Daniels's ability to work in light of her mental health impairments, the ALJ's decision to deny benefits is supported by substantial evidence. Therefore, the Appeals Council did not err in declining to remand Ms. Daniels's case to the ALJ for further consideration.

## IV. CONCLUSION

The Commissioner's decision is supported by substantial evidence and does not contain reversible error. Accordingly, the Commissioner's decision is **AFFIRMED,** and the case is **DISMISSED** with prejudice, with each party to bear its own costs and expenses. The Clerk of Court shall enter final judgment in favor of the Commissioner consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida, on February 4, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge